**Thomas R. ORRELL, Louis B. Orrell, and Bessie S. Orrell,**

v.

**The UNITED STATES.**

No. 50132.

United States Court of Claims.

March 6, 1956.

Stephen Ailes, Washington, D. C., for plaintiffs. Henry C. Ikenberry, Jr. and Steptoe & Johnson, Washington, D. C., were on the briefs.

Howard O. Sigmond, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiffs bring this suit to recover $30,969 for the alleged breach by the Government of a lease under which the defendant leased from plaintiffs a portion of a certain tract of land, together

with a fishing pier, which extended into the ocean from the land on the coast of North Carolina, near Kure Beach south of Wilmington. Plaintiffs contend that a breach occurred when the Government failed to return the pier upon the expiration of the lease in as good condition as it was upon the Government's entry, ordinary wear and tear excepted.

The pertinent provision of the lease reads as follows:

> The Government shall * * * return the buildings and improvements located on the leased premises in as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted; * * *

On August 1, 1944, while occupied by the defendant under the lease, the pier was partially destroyed by a hurricane, and it is plaintiffs' contention that if the defendant had kept the pier in proper repair, as plaintiffs had done prior to the making of the lease, it would have withstood the storm.

The defendant actually took possession of the property, consisting of about 8 acres and the pier, on January 23, 1943, under a court order resulting from a condemnation proceeding instituted in the United States District Court for the Eastern Division of North Carolina. Subsequent negotiations with plaintiffs led to the execution of the lease in question on September 25, 1943, after which the case in the district court was dismissed.

While the Government had no need for the pier as such, it became necessary to take possession of it, together with the land, because of its proximity to Fort Fisher, an Army post. The pier was located approximately 1¼ miles south of the northern boundary of the fort, and it became necessary for those desiring to use the pier to pass through an Army gate located on the post boundary. In 1941, when the surrounding land of approximately 400 acres was leased from plaintiffs for the establishment of the fort, the small tract above-mentioned of 8.04 acres on which the pier was located was excluded with the understanding that the operation of the pier for commercial purposes would continue. Plaintiffs further had an understanding with the commanding officers of the Army Post that persons desiring to patronize the pier would be permitted to pass through the Army gate to reach the pier. Difficulties developed however in the carrying out of this understanding. In addition, the use of the pier was restricted during the period when gun implacements along the ocean side of the fort were engaged in practice firing at targets out over the water. As a result, by the end of 1942, the situation in respect to continued operation of the pier was unsatisfactory to both the Army and the plaintiffs and, in January of 1943, the Government instituted the condemnation proceeding referred to above. After the court order of January 23, 1943, the pier was not open to the public. The restaurant which plaintiffs had erected on the shoreward end of the pier was converted into a post exchange. Soldiers were occasionally permitted to fish from the pier.

■ The Government occupation under the lease was terminated effective March 30, 1945. Plaintiffs' petition was filed on April 27, 1951. Since this date is more than six years subsequent to the termination of the lease, defendant asserts that plaintiffs' claim is barred by the statute of limitations, 28 U.S.C. § 2501. While the termination was effective March 30, 1945, the lease provided that the Government, if required by the lessor, should have a period of 30 days from date of termination to make necessary repairs. The Government was so requested by plaintiffs to make repairs. This matter of repairs did not, therefore, become closed until April 30, 1945. Plaintiffs' petition having been filed on April 27, 1951, is within the statutory period.

While the Army made no repairs during its period of occupancy, and no agreement was ever reached as to what repairs the Army should be required to make, the Army did, prior to relinquishing possession, make repairs for which it considered itself obligated at a cost of $2,425. The parties have now agreed that the repairs so made cover all items of plaintiffs' claim except the restoration of the storm damage.

The storm of August 1, 1944, was a severe one, and while it is not disputed that plaintiffs' pier was well constructed, the damage which it sustained was similar to the damage sustained by every other fishing pier on this section of the coast.

Plaintiffs place great weight on the testimony of a Mr. Kure who was the pioneer of the locality in the construction and maintenance of fishing piers. His own pier was swept away by the storm on August 1. He testified that if plaintiffs' pier had been kept in proper repair during the period of the lease it would have withstood the storm. He further testified however that the hurricane of August 1, 1944, was the worst storm he had experienced in his 40 years in the area. When considered in the light of this admission his testimony loses much if not all its weight.

The evidence fails to support plaintiffs' contentions that their pier had been materially weakened because of its alleged misuse by soldiers and from being struck by stray bullets. Even if so found, it would fail to detract from the ultimate conclusion that the proximate and sole cause of the damage complained of here was the hurricane. The commissioner so found, and a consideration of plaintiffs' exceptions fails to convince us that this finding is not correct.

Since the lease relieved the Government from responsibility for damages caused "by the elements or by circumstances over which [it] has no control", we find that there is no liability chargeable to the defendant on plaintiffs' claim for damages by reason of defendant's refusal to make further repairs. Plaintiffs' petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.